IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01879-PAB

KEVIN D. DIXON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE**
_____

This matter comes before the Court on plaintiff Kevin D. Dixon's complaint [Docket No. 3], filed on September 2, 2008. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On March 1, 2007, Mr. Dixon filed for disability benefits and supplemental benefits under the Act. R. at 95-106. He has alleged a disability onset date of January 1, 2004. R. at 95. After Mr. Dixon's claim was denied at the initial level, R. at 27, an Administrative Law Judge ("ALJ") conducted a hearing on December 5, 2007, at which plaintiff was represented by counsel. R. at 27-62. The ALJ received testimony of a

Vocational Expert ("VE") at this hearing. On December 27, 2007, the ALJ issued a decision denying plaintiff's application for benefits. R. at 10-24.

Plaintiff requested that the Social Security Administration Appeals Council review the ALJ decision. R. at 5-6. On June 27, 2008, the Appeals Council denied that request. R. at 1-3. Therefore, the ALJ's denial stands as the Commissioner's final decision on this matter. Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable. *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court will not

"reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

      The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### B.  The ALJ Decision

      In his December 27, 2007 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 1, 2004, his alleged onset date. R. at 16. At step two, the ALJ determined that plaintiff had the following severe impairments: hepatitis C carrier and degenerative disc disease, lumbar spine. R. at 16. At step three, the ALJ concluded that Mr. Dixon did not have an impairment or combination of

impairments that met or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  R. at 18.

The ALJ then turned to the task of determining plaintiff's RFC and found that Mr. Dixon had

> the residual functional capacity to perform work with the following limitations: lift and carry 10 pounds frequently, 20 pounds occasionally; sit about 6 hours in an 8-hour day; stand and walk, each 4 hours in an 8-hour day, with postural shifts that do not require leave of the work station; no heights, ladders, scaffolds, kneeling, crawling or temperature extremes; occasional stooping, crouching and balancing.

R. at 18.  In applying this RFC at step four, the ALJ found the plaintiff was not able to perform his past relevant work.  R. at 21.  At step five, the ALJ concluded that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  R. at 22-23.  In determining the number of jobs, the ALJ cited to and interpreted the Social Security Administration's Medical-Vocational Guidelines, as well as the testimony of the VE.  R. at 22-23.  Based on his step-five findings, the ALJ concluded that Mr. Dixon had not been under a disability, as it is defined under the Act, from his alleged onset date of January 1, 2004 through December 27, 2007, the date of the ALJ's decision.  R. at 23.

### C.  Plaintiff's Objections to the ALJ Decision

In his appeal, Mr. Dixon objects to the ALJ's finding of no disability on three grounds: (1) the ALJ did not properly consider all of Mr. Dixon's medically determinable impairments; (2) the ALJ's RFC determination was not supported by substantial evidence; and (3) the ALJ's finding that Mr. Dixon could perform jobs identified by the

VE was not supported by substantial evidence. I address each of these objections in turn below.

### *1. Determination of Severe Impairments at Step Two*

Mr. Dixon argues that the ALJ erred at step two of the five-step process by finding that Mr. Dixon had no severe mental impairments. Mr. Dixon argues that the ALJ should have found he had borderline intellectual functioning and a learning disability. *See* Pl.'s Opening Br. at 6-10. Mr. Dixon also argues that remand is necessary for the Commissioner to consider the combined effect of Mr. Dixon's severe and non-severe impairments. *See id.* at 9-10.

At step two, a claimant must show that, regardless of his age, education, and RFC, there exists more than the mere presence of a condition or ailment, or combination thereof, that meets the duration requirement of the regulations; however, he need only make a "de minimis" showing of such. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); see also 20 C.F.R. § 404.1520(a)(4)(ii). The Tenth Circuit has described this standard by explaining that "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity." *Hinkle*, 132 F.3d at 1352.

Under the regulations, a "severe impairment" is an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). "Basic work activities . . .

mean the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).  According to the regulations, examples of "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).

The ALJ did err when he stated that Mr. Dixon's IQ according to his school records – between 80 and 84 – placed him "significantly above the Borderline IQ range."  S*ee* R. at 17; *Dray v. Astrue*, 353 F. App'x 147, 151 (10th Cir. 2009) (citing *DSM-IV-TR* at 740) (defining borderline intellectual functioning as an IQ score within the 71-84 range).  Despite this error, substantial evidence supports the ALJ's conclusion that Mr. Dixon's intellectual functioning and learning disability did not represent severe impairments.  In assessing these alleged impairments, the ALJ considered Mr. Dixon's testimony that he did his own shopping, handled his money and "noted no difficulty with attention or concentration."  R. at 19.  The ALJ also considered Mr. Dixon's past semi-skilled work and his education as evidence that Mr. Dixon was capable of learning basic skills.  R. at 22.  Nothing in the record shows that Mr. Dixon's intellectual functioning had a serious impact on his ability to do basic work activities.  *See Hinkle*, 132 F.3d at 1352.

Even if the ALJ erred at step two when he determined that Mr. Dixon did not have a severe impairment of borderline intellectual functioning, this error would have had little independent impact on the ultimate disability determination.  At step four, an ALJ is to consider all of a claimant's impairments and limitations, even those that are not severe.  *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521 and 404.1523, when we assess your residual functional capacity.").  Therefore, to the extent that the ALJ failed to consider all evidence of Mr. Dixon's impairments, severe and otherwise, in determining his RFC, that error is better addressed at step four, not at step two.  Similarly, the plaintiff's argument that the ALJ erred by failing to consider the combined effect of all of Mr. Dixon's severe and nonsevere impairments is also better addressed at step four.  *See* Pl.'s Opening Br. at 9-10.

### 2. The ALJ's RFC Determination

Mr. Dixon argues that the ALJ's errors at step two resulted in the ALJ finding that Mr. Dixon retained the residual functional capacity to perform work that he in reality is not able to perform.  *See* Pl.'s Opening Br. at 10.  Mr. Dixon argues that he has genuine mental and physical impairments which produce the symptoms he alleges.  *Id.*

However, in determining Mr. Dixon's RFC, the ALJ "considered all [Mr. Dixon's] symptoms" and assessed whether those symptoms were consistent with all the evidence, including all objective medical evidence.  R. at 18.  The ALJ properly concluded that, although Mr. Dixon's medically determinable impairments could reasonably produce his alleged symptoms, Mr. Dixon's subjective "statements concerning the intensity, persistence and limiting effects" of these symptoms were "not entirely credible."  R. at 19.

Considering Mr. Dixon's mental impairments, the ALJ properly disregarded the Department of Corrections' assessment of Mr. Dixon's IQ as 72.  "It is within the province of an ALJ to make factual determinations regarding the validity of an IQ score, that is, whether the IQ score is 'an accurate reflection of [a claimant's] intellectual capabilities.'"  *Flores v. Astrue*, 285 F. App'x 566, 568, 570 (10th Cir. 2008) (affirming ALJ's finding that plaintiff had borderline intellectual functioning but was still capable of performing light work) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007)).  The ALJ considered Mr. Dixon's own assessments of his mental capabilities, his education, and his past work when he determined that Mr. Dixon's only mental limitation was his "limited education."  R. at 19, 22.  As for Mr. Dixon's physical impairments, the ALJ relied on Mr. Dixon's own reports regarding his functioning as well as Dr. Carson's report to conclude that Mr. Dixon was able to perform light work despite his back problems.  R. at 18-21.  The ALJ considered all of Mr. Dixon's impairments, severe and non-severe, when determining his RFC.  *See* R. at 18.  Substantial evidence supports the ALJ's RFC determination.

### *3. Step Five Determination*

Mr. Dixon claims that the ALJ failed to consider his mental impairments and include them in the hypothetical posed to the VE. Pl.'s Opening Br. at 11-12. This argument essentially restates Mr. Dixon's objections to the ALJ's RFC determination. *See id.* Because the Court finds that substantial evidence supports the ALJ's RFC determination, the Court also finds that the ALJ did not err formulating the hypothetical question he posed to the VE. *See* R. at 47-53.

### III.  CONCLUSION

For the reasons stated above, the Court concludes that the Commissioner's finding that the plaintiff is not disabled under the Act is based upon substantial evidence and represents a correct application of the law. As a result, the Commissioner's decision is AFFIRMED.

DATED November 19, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge